UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
:
UNITED STATES,                                              :
:
                       **Plaintiff,**  :
:     S1 07 Cr. 699 (HB)
                      - against -    :
:     **OPINION & ORDER**
**LORENZO RODRIGUEZ a/k/a "Flaco," a/k/a"**       :
**SANTOS RODRIGUEZ, a/k/a JUAN HERRERA,**         :
**DEMI ABRIHAM, a/k/a "300," PEDRO CABRERA,**     :
**a/k/a "Pete," BRYANT DE LOS SANTOS, JOSE**      :
**CIRRASQUILLO, a/k/a "Tio,"**                    :
:
                       **Defendants.**  :
:
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

### Summary

      Lorenzo Rodriguez, Jose Cirrasquillo, Demi Abriham, Bryant de los Santos, and Pedro Cabrera ("Defendants") are charged in a two-count Indictment handed up on October 3, 2007[1] and which charges conspiracy to commit robbery and conspiracy to possess with intent to distribute cocaine, in violation of Title 18, United States Code, Section 1951, and Title 21 United States Code, Sections 812, 841(a)(1) and (b)(1)(A), and 846. Defendants de los Santos, Abriham and Cabrera have filed several pre-trial motions in which Defendant Rodriguez joined.[2]

      Defendants move to suppress their post-arrest statements arguing that they were made in violation of their Fifth Amendment rights either because the Defendants were questioned before Miranda waivers were secured or because the Defendants did not in fact understand the waivers as presented to them. Defendants also move to suppress their statements and dismiss the Indictment on the basis that the police lacked probable cause to arrest them. Third, Defendants move to dismiss the Indictment because the police conduct was so outrageous that it violated the Defendants' rights under the Due Process clause of the Fifth Amendment.

---

[1] This is the Superceding Indictment handed up on October 3, 2007, adding Pedro Cabrera as a Defendant.
[2] Not all of the motions are complete, fully respond to the Government's opposition, or reaffirm arguments originally made.

A Suppression Hearing was held on November 19, 2007 to argue the admissibility of the post-arrest statements and included argument on the probable cause and outrageous conduct issues. For the reasons set forth below, all the motions are DENIED.

## I. BACKGROUND

A. Factual Background

*1. The Robbery*

The Indictment alleges that over the period June 7, 2007 through July 27, 2007, the Defendants conspired to commit the robbery of a cocaine dealer with approximately 25 kilograms of cocaine. The scheme came about through the good offices of a confidential informant ("CI"), who it is alleged had previously given law enforcement reliable information and told the agents about a group of individuals with whom he had committed robberies in the past. Complaint ¶ 3 ["Compl."]. The Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") and NYPD Joint Firearms Taskforce worked with the CI to stage a robbery with this group. See id. ¶¶ 2-5.

On June 7, 2007, the CI contacted "the leader of the group," Defendant Rodriguez, to discuss a potential robbery of a large quantity of cocaine. Compl. ¶ 4. The CI contacted Rodriguez via monitored and recorded telephone calls over the next several weeks to discuss stealing the cocaine and to introduce Rodriguez to the ATF undercover special agent ("UC") and the person with the information on the location of the cocaine. Compl. ¶ 5. After contacting Rodriguez on several occasions to discuss logistics, the UC met with Rodriguez and Jose Cirrasquillo in his hotel room on June 26, 2007. Compl. ¶¶ 5-7. The UC explained that he was a drug courier for Colombian dealers, but was upset about the non-payment for the regular hauls of about 25-30 kilograms he had made on their behalf and wanted to rob them as pay-back. Compl. ¶ 7a. Rodriguez and Cirrasquillo agreed to participate. Compl. ¶ 7a.

The three planned the robbery for the following day. Compl. ¶ 7d. During the meeting UC explained that three individuals would be inside the location and at least one would be armed. Compl. ¶ 7d. Rodriguez and Cirrasquillo discussed how they would enter the site, restrain the individuals, the approximate number of people they would recruit to do the job, and the split of the cocaine. Compl. ¶7e-h. That night, Rodriguez contacted the UC in a recorded phone call to inform him that his team was ready, but that the split of the loot was inadequate, since the five to six participants would only receive approximately 5 kilograms of cocaine.

Letter-Brief in Opp. To Mot. to Suppress and Dismiss Indictment, Nov. 12, 2007, Exhibit C, Transcript Tape Recorded Phone Conversation June 26, 2007 at 2; see also Compl. ¶ 8. The UC and Rodriguez agreed to resolve the split the following day. Id.; Compl. ¶ 8.

On June 27, 2007, the UC told Rodriguez to bring his team to a gas station in the Bronx to meet before the robbery. Compl. ¶ 9. Rather than arriving with his team, Rodriguez arrived alone and said the others were driving around. Compl. ¶ 9. Despite some hesitation, Rodriguez agreed to get the rest of the team and proceed with the robbery. Id. ¶¶ 9-10. Rather than arrive altogether, Rodriguez returned alone again fifteen minutes later, and told the UC that the team was ready to be picked up at another location. Id. The UC drove Rodriguez one or two blocks away, Rodriguez got out of the UC's car and entered another car driven by Cirrasquillo. Compl. ¶ 11. Cirrasquillo pulled over and told the UC to wait. Id. Two minutes later, Cirrasquillo pulled into the street and a Range Rover pulled in behind Cirrasquillo. Compl. ¶ 11. Cirrasquillo signaled to the UC to go ahead to the site. Id. The UC drove to a storage facility with Cirrasquillo and Rodriguez following in one car and the Range Rover following behind them. Id. The UC drove into the storage facility and Cirrasquillo and the Range Rover parked outside. Compl. ¶ 12. The UC then drove back outside to pick up Rodriguez and enter the facility to pick up the van for the job. Id. Cirrasquillo and the individuals in the Range Rover remained in their cars outside. Id. JTF agents arrested everyone at the scene: Rodriguez and Cirrasquillo as well as everyone in the Range Rover.[3] Id.

*2. The Arrest and Miranda Warnings*

Detective Shanhai, one of the arresting officers, transported the Defendants to the ATF station in Brooklyn at approximately 4:00 p.m. on June 27th. See Hearing Transcript at 7 ("Tr."). He then separated the Defendants and began fingerprinting and taking "pedigree" information from each in turn, during which time they were given food and bathroom breaks.[4] See id. Det. Shanhai testified that he:

> decided at that time to start talking to each one of the individuals about their Miranda warnings, just to get an indication of who was willing to answer questions for me, either at that time or later on in the evening.

---

[3] This totaled six individuals: Rodriguez, Cirrasquillo, Pedro Cabrera, the driver of the Range Rover, and its passengers, Demi Abriham, Bryant de los Santos and Jetmir Celaj.
[4] Pedigree includes information such as name, date of birth, education, and health statistics. See Suppression Hearing Transcript, Nov. 19, 2007.

3

<u>Id.</u>  According to Det. Shanhai, he provided each Defendant with an "Advice of Rights and Waiver."  <u>See</u> <u>id.</u> at 7-8 and Govt. Exhs. 1-2.

In response to questions about his "Mirandizing" of Defendants de Los Santos and Abriham in particular, Det. Shanhai testified that he explained that he would read each section, ask them if they understood it and to affirm that they understand; ask each to initial each paragraph; and then, finally, if they agreed to waive their rights and proceed to answer any questions, to sign the waiver at the bottom of the form.  <u>See</u> Supp. Tr. at 10.  Det. Shanhai testified that he completed this procedure with the Defendants, in particular de los Santos and Abriham, and secured their waivers at 6:05 p.m. and 7:00 p.m. respectively.  <u>See</u> <u>id.</u> at 11-13.  Furthermore, Det. Shanhai testified that he did not take any statements from either of these two Defendants until later so that he could complete the processing of the other four defendants.  <u>See</u> <u>id.</u> at 13.

Defendant Demi Abriham alleges in his October 9, 2007 Affidavit that after his arrest on June 27, 2007 in the Bronx:

> I was taken by the police to their office in Brooklyn.  At the office I was asked questions by the police which I answered.  After the questioning I was given a Waiver of Rights which I signed.  At no time did the police advise me of my rights before asking questions.

Abriham Affidavit ¶¶2-4. (10/9/2007).  Similarly, Defendant de los Santos alleges in his October 10, 2007 Affidavit that after his arrest with the co-Defendants

> I was taken to a law enforcement facility and placed in a room separate from the others, and questioned at length by the police. I was given a written waiver of my rights, which I signed.  I was frightened and nervous during this entire time and I made a statement which was tape recorded.

De Los Santos Affidavit (10/10/2007).

<u>B. Procedural History</u>

Four of the six Defendants were indicted for conspiracy to commit robbery and trafficking in cocaine in contravention of 18 U.S.C. § 1951 and 21 U.S.C. §§ 812, 841, 846, respectively on June 27, 2007.  Mr. Celaj was released to a detective from the NYPD Warrant Squad for a Bench Warrant and Defendant Cabrera was released the night of the arrest, June 27, 2007.  Defendant Cabrera was re-arrested on September 25, 2007 and indicted on October 3, 2007 with the same charges as the remaining Defendants.

4

Pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure, three of the five Defendants filed pre-trial motions to either suppress post-arrest statements and physical evidence and dismiss the indictment. On November 14, 2007, Defendant, Lorenzo Rodriguez, filed a letter to the Court requesting to join in all relevant motions and I endorsed this request. Defendant Cirrasquillo has not filed or joined in any pre-trial motions. Defendant De Los Santos filed a motion to suppress statements and physical evidence on October 10, 2007 arguing that his statements should be suppressed because of a lack of probable cause.[5] Defendant Abriham filed a notice of motion to suppress physical evidence questioning the Miranda waiver.[6] Defendants Abriham and Cabrera jointly filed a motion to dismiss the Indictment based on outrageous conduct by the Government on November 7, 2007. The Government filed an opposition brief on November 12, 2007 addressing the arguments in all Defendants' papers. No replies were made. A Suppression Hearing on the admissibility of the tape-recorded statements was held on November 19, 2007. Subsequent to this hearing, the parties filed letter-briefs focusing solely on the issue of probable cause, which was raised by Defendants at the hearing.

## II. DISCUSSION

A.    Miranda Waiver

Defendants Abriham, Cabrera and de los Santos, move, and Rodriguez joins in their motions to suppress their post-arrest statements and all physical evidence obtained in the arrest at the storage facility on the basis that the statements were made in violation of their rights under Miranda. See Abriham Not. of Mot. to Suppres Phys. Ev., Oct. 9, 2007; de los Santos Not. Mot. Supp. Statements and Phys. Ev., Oct. 5, 2007; de los Post-Suppression Hearing Letter-Brief, Nov. 21, 2007.

A motion to suppress statements by a defendant may be made on various grounds, including failure to properly advise the defendant of his or her rights. See Miranda v. Arizona, 384 U.S. 436 (1966). A motion to suppress statements will be denied if it is shown that the

---

[5] The memorandum of law was dated October 5, 2007. The accompanying Affidavit of De Los Santos alleging that he was questioned before waiving his Miranda rights was executed October 10, 2007. In neither case does the memorandum attack the validity of the waiver. De Los Santos does attack the waiver in his Post-Suppression Hearing Letter Brief moving to dismiss the Indictment and suppress his statements arguing that the waiver was ineffective because the form did not require that Defendant signal he understood and De Los Santos as a non-native English speaker did not in fact necessarily understand the waiver. This argument, asserted over one month after the first motion, still does not present any facts or clearly assert that the Det. Shanhai questioned the Defendant before securing the waiver. See De Los Santos Post-Hearing Brief, November 21, 2007.

[6] Based on the allegation in the Abriham Affidavit that Det. Shanhai questioned the Defendant before securing the Miranda waiver, the Notice of Motion requested a Suppression Hearing.

individual waived her rights under Miranda provided that the government shows that (1) the relinquishment of the defendant's rights was voluntary, and (2) that the defendant had a full awareness of the right being waived and of the consequences of waiving that right. See United States v. Jaswal, 47 F.3d 539, 542 (2d Cir. 1995).

First, Defendants Abriham and De Los Santos, who produced incriminating tape-recorded statements while in police custody, allege that their waivers of their Miranda rights are ineffective because the arresting and interrogating officer, Detective Shanhai, questioned them before they waived their Miranda rights. See Def. Abriham Aff. October 9, 2007; Def. Aff. De Los Santos October 10, 2007; Def. de los Santos Aff. in Support of (10/10/2007). Neither these motions nor the facts or arguments made at the hearing mention the allegations made in the affidavits that Defendants Abriham and de los Santos were questioned by police before waiving their Miranda rights. In the first motion to suppress the statements, Mr. Aidala did not allege that Miranda warnings were improperly given, but instead argues the Miranda waiver could not resolve the alleged lack of probable cause leading to the arrest. Aidala Affirmation and Motion to Suppress Physical Evidence and Statements [Aidala Aff.], October 5, 2007, at 5. In the Post-Hearing letter-brief, De los Santos alleges his waiver of Miranda was defective because the Miranda Rights and Waiver form he received "did not ask, or indicate in any way, whether he understood each of his rights. Only his initials were placed after each one, perhaps indicating that he had read same, but certainly not indicating that he understood." See Post-Hearing Letter-Brief, Def. de los Santos, November 21, 2007.

The Advice of Rights and Waiver form executed by both de los Santos and Abriham clearly provides at the foot of the document an opportunity to indicate that each defendant understood what the waiver meant and that he consents, and each did so indicate. See Exhs. 3501-C, 3501-D. Furthermore, nothing in Det. Shanhai's testimony suggests any interrogation of Defendants prior to securing the waiver and Defendants produced no evidence at the Hearing to contradict Shanhai's testimony or show that the Defendants did not voluntarily waive their rights. Thus, the motions to suppress the statements are denied.

B.   Probable Cause

Defendants also argue that there was insufficient probable cause to justify arrest, and thus their statements should be suppressed and the Indictment dismissed. The Government responds that the Complaint on its face provides more than sufficient facts and circumstances to show that

6

the officers had probable cause to arrest all the parties at the storage facility. See Govt. Opp. Briefs, Nov. 12, 2007 and Nov. 20, 2007. Moreover, because an Indictment was returned by a properly constituted Grand Jury, probable cause is conclusively presumed.

It is well settled that an "indictment, 'fair upon its face,' and returned by a 'properly constituted grand jury,' conclusively determines the existence of probable cause and requires issuance of an arrest warrant without further inquiry." Gerstein v. Pugh, 420 U.S. 103, 117 n.19, 43 L. Ed. 2d 54, 95 S. Ct. 854 (1975) (quoting Ex parte United States, 287 U.S. 241, 250, 77 L. Ed. 283, 53 S. Ct. 129 (1932)).[7]  Defendants have not raised any facts alleging defects on the face of the indictment or impropriety in the Grand Jury.

Further, the Complaint shows and the moving papers fail to refute the existence of probable cause. To show probable cause, the Government must demonstrate that it had knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the plaintiff had committed or was committing a crime at the time of his arrest. United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990).[8] "Probable cause requires neither a prima facie showing of criminal activity nor a showing that evidence of crime will more likely than not be found." United States v. Perea, 848 F. Supp. 1101, 1104 (E.D.N.Y. 1994) citing United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987). "Rather, it requires only the possibility of criminal activity or the possibility that evidence of a crime will be found." Perea, 848 F. Supp. at 1104.

Defendants Abriham, Cabrera and de los Santos argue that the only basis for their arrest was their presence in a vehicle in close proximity to where Rodriguez and Cirrasquillo had arranged to meet the UC. See de los Santos Mot. to Dismiss Supp. Statements and Phys. Ev.

---

[7] An indictment is sufficient to try a defendant on the counts charged therein, and satisfies the requirements of the fifth amendment, Lawn v. United States, 355 U.S. 339, 349 (1958); it cannot even be challenged on the ground that it is based on inadequate or incompetent evidence, see Costello v. United States, 350 U.S. 359, 363 (1956). Furthermore, the return of an indictment eliminates the need for a preliminary examination at which a probable cause finding is made by a judicial officer pursuant to Rule 5(c) of the Federal Rules of Criminal Procedure. Sciortino v. Zampano, 385 F.2d 132, 133 (2d Cir. 1967), cert. denied, 390 U.S. 906 (1968).
[8] Probable cause does not require certainty, see e.g., Ornelas v. United States, 517 U.S. 690, 695 (1996) (probable cause is a "commonsense, nontechnical" concept determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act"), Illinois v. Gates, 462 U.S. 213, 231-32 (1983) (probable cause "does not deal with hard certainties, but with probabilities"), and that probable cause must be determined from a fact-specific inquiry into the totality of the circumstances. See e.g., Tenenbaum v. Williams, 193 F.3d 581, 603 (2d Cir. 1999) ("[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied"), Adams v. Williams, 407 U.S. 143, 149 (1972) (stating that in determining whether probable cause exists, "the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action").

Oct. 10, 2007 and Post-Hrg. Brief, Nov. 21, 2007; Abriham & Cabrera Mot. to Dismiss Indictment. De los Santos correctly states that "it is well settled that mere presence at the scene of a crime does not provide probable cause to arrest." Aidala Aff. at 3, citing Ybarra v. Illinois, 444 U.S. 85 (1979) ("[A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause.").

These Defendants claim that there were no circumstances, other than their presence in a car parked adjacent to Rodriguez and Cirrasquillo's car, that would validate their arrest—for example, the events did not take place at an unusual hour; the location was not deserted or desolate; and the Range Rover did not do anything suspicious such as drive around the block several times before parking. See Aidala Aff. at 5. De los Santos argues that "[c]learly the detectives were engaged in a fishing expedition, with no prior information to connect any of the individuals to any criminal activity." Id.

However, the Complaint reflects a host of facts to the effect that the Defendants were not merely in the wrong place at the wrong time. First, on several occasions over the course of the UC's conversations with Rodriguez, Rodriguez indicated that he would be joined by several other individuals to commit the robbery. Further, on the day of the arrests, Rodriguez and Cirrasquillo instructed the UC to wait on the side of the road; then, approximately two minutes later, Cirrasquillo pulled into traffic, followed by the Range Rover with Cabrera, Abriham and de los Santos. Thereafter, the Range Rover followed the UC and Cirrasquillo for several blocks, until all three cars stopped at the pre-arranged meeting location—a storage facility in the Bronx. See Compl. ¶¶ 11-12.

Because the UC was led to believe that other individuals would be joining Rodriguez and Cirrasquillo as accomplices, and observed a car following them to the meeting site, probable cause existed from the totality of the circumstances that those in the following vehicle—including Defendants—were there to assist in the robbery even though the UC had never met Defendants. See United States v. Barlin, 686 F.2d 81, 87 (2d Cir. 1982) (holding that, on review of all the circumstances, probable cause existed even though agents were unfamiliar with the defendant arrested because he entered with two others whose involvement in an ongoing illegal activity was apparent); United States v. Munoz, 738 F. Supp. 800, 802 (S.D.N.Y. 1990) (finding that probable cause existed to arrest person traveling in a car with a suspected kidnapper because the car in which the individual was traveling was observed following closely behind a second

vehicle carrying other suspects, and the agents had knowledge that the kidnapping suspect was to be assisted by other individuals).

Defendants argue that the storage facility was located in a "heavily trafficked area . . . open for business" where cars would normally be expected to drive by or park. See de los Santos Letter-Brief, Nov. 21, 2007, at 3. But Defendants fail to show that any other cars were driving in the area or parked near the facility. Notably, the officers arrested only the occupants of Cirrasquillo's car and the Range Rover that had followed the UC to the facility—no other sweep of the area was made.

In conclusion, looking at the totality of circumstances and the undisputed evidence in this case, the agents had probable cause to arrest the Defendants based on the information they had acquired from Rodriguez and Cirrasquillo up to the arrest at the storage facility including those in the second car—de los Santos, Abriham, and Cabrera. While the agents did not physically see Defendants de los Santos or Abriham before the arrest, the agents knew Rodriguez and Cirrasquillo planned to arrive and conduct the robbery with five or six individuals and they did, Cirrasquillo and Rodriguez signaled to the UC to move out to the pre-arranged meeting place only when the Range Rover appeared, and the Range Rover subsequently followed the UC to the site. Having found probable cause, the motions to dismiss the indictment on that ground too must fail.

C.     Outrageous Conduct

Finally, Defendants Abriham and Cabrera filed a joint motion to dismiss the indictment alleging that "the conduct of the government in setting up a robbery of nonexistent cocaine from nonexistent Colombian narcotics traffickers, solely for the purpose of inducing the commission of a crime, was outrageous," such that the concept of fairness embodied in the Due Process clause is violated and the indictment must be dismissed. They allege that Rodriguez was cajoled into his role in the robbery by a government informant. Even more far-fetched, Abriham & Cabrera contend in their memorandum of law that Rodriguez "was unaware of the cocaine" and finally that he "had expressed no interested in committing the robbery with the informant." The government addressed this argument in its opposition brief of November 12, 2007. No reply was filed and none of the Defendants has reasserted this argument since it was first made. Whether or not Defendants adhere to this argument, the motion must be denied.

The Supreme Court in dictum recognized that there may be situations in which governmental action is so outrageous that due process principles would absolutely bar the government from invoking judicial processes to obtain a conviction. United States v. Russell, 411 U.S. 423, 431-32 (1973). The standard for the dismissal of an indictment for outrageous conduct by law enforcement is quite strict. United States v. Cuervelo, 949 F.2d 559, 563 (2d Cir. 1991).[9] To be successful, "police over-involvement in crime would have to reach a demonstrable level of outrageousness before it could bar conviction." United States v. Carpentier, 689 F.2d 21, 25 (2d Cir. 1982).

Rather, relying on United States v. Twigg, 588 F.2d 373 (3d Cir. 1978), Defendants here allege over-involvement by the JTF agents because the government and the confidential informant conceived of the operation and there was no cocaine to complete the robbery. Their reliance on Twigg is misplaced. There, the court found outrageous government conduct because defendants were incapable operating the "speed factory" without the active intervention and supervision of the government informant because the defendants were not chemists and lacked the necessary knowledge and ability to build or operate the factory. See Abriham & Cabrera Mot. to Dismiss, Oct. 10, 2007, at 3.

The Second Circuit in United States v. Romano clearly distinguished between the defendants in Twigg who were incapable of creating the drug factory because they lacked skills and resources and the Romano defendants who were clearly capable of conspiring to purchase and distribute heroin without active aid and supervision of the government. See United States v. Romano, 706 F.2d 370, 374 (2d Cir. 1983) (finding no outrageous government conduct). The Defendants here have not argued that they were clearly incapable of conspiring to or committing the robbery of the cocaine.

Defendants also argue that the deception undertaken by the UC agent alone demonstrates outrageousness. See Abriham and Cabrera Mot. to Dismiss, Oct. 10, 2007, at 1. But even the ABSCAM operation, which was an elaborate and controversial sting orchestrated by the Federal Bureau of Investigation where the agents and their informants "produced people with fictitious identities ready to pay bribes to Congressmen," government participation did not violate due

---

[9] The defense of outrageous governmental conduct has prevailed to restrain law enforcement activities that involve coercion or outrageous violation of physical integrity. United States v. Myers, 692 F.2d 823, 838 (2d Cir. 1982) citing Watts v. Indiana, 338 U.S. 49, 55 (1949) (finding outrageous conduct from six days of intense interrogation of accused).

10

process. See United States v. Myers, 692 F.2d 823, 838 (2d Cir. 1982); Carpentier, 689 F.2d 21, 25.

Though Defendants rely on United States v. Gardner, 658 F. Supp. 1573 (W.D. Pa. 1987) for the proposition that government involvement overreaches where it overwhelms an obvious reluctance on the part of defendants to commit the crime, Defendants fail to demonstrate any "obvious reluctance" on their part besides the brief hesitation expressed by Rodriguez on the day of the scheduled robbery.[10] This reluctance was quickly overcome by a conversation with the CI. Unlike in United States v. Lard, 734 F.2d 1290, 1296-97 (8th Cir. 1984), the government informant here did not repeatedly contact Defendant Rodriguez, or any other Defendant, to overcome initial disinterest or refusal to participate in the criminal enterprise—all conversations prior to the day of the robbery showed an intent to proceed.

The Defendants rely on the conception and design of the sting by law enforcement to convince this Court to dismiss the indictment. They fail however to provide any facts of governmental physical or psychological coercion, efforts to overcome a natural reluctance to go forward with the robbery, excessive control or involvement, or an inability on the part of Defendants to conduct the robbery without the government's participation. The motion to dismiss the indictment based on outrageous conduct must be denied.

### III. FINAL DISPOSITION

Because I find that there was probable cause that the Defendants properly waived their Miranda rights and that there was no outrageous conduct on the part of law enforcement, Defendants' motions are DENIED in their entirety. The trial will commence on January 14, 2008 at 9:30 a.m. The Clerk of the Court is directed to close these motions and remove them from my docket.

DATED:    New York, New York
          January 2, 2008

                                                          _____
                                                                     U.S.D.J.

---

[10] In fact, Defendants do not explain the reluctance—whether this was out of motivation to forego committing the crime or residual conflict over the split over the proceeds or simply lack of trust of the UC.

11